UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

DAVID CARLOS WASHINGTON,

    Plaintiff,

    v.

BRIDGESTONE RETAIL OPERATIONS,
LLC

    Defendant.

Civil Action No. TDC-24-0626

**MEMORANDUM OPINION**

Self-represented Plaintiff David Carlos Washington has filed a Complaint against Defendant Bridgestone Retail Operations, LLC ("Bridgestone") in which he alleges discrimination and harassment on the basis of race, and unlawful retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17. Defendants have filed a Motion to Compel Arbitration or, Alternatively, to Dismiss Plaintiff's Complaint. Upon review of the Complaint and the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED, the parties will be compelled to arbitrate the claims in the Complaint, and this case will be stayed pending arbitration.

**BACKGROUND**

**I.    Alleged Discrimination and Retaliation**

In the Complaint, Washington alleges the following facts which the Court accepts as true for purposes of the resolution of the Motion. Until approximately October 13, 2023, Washington was the Store Manager of Bridgestone's Wheaton, Maryland location ("Bridgestone-Wheaton"),

which sells tires. Washington alleges that in the final five months of his employment at Bridgestone, he was subjected to discrimination and harassment on the basis of race during and as a result of an investigation into missing inventory from Bridgestone-Wheaton. Specifically, he alleges that on May 16, 2023, he and Darius Rice, the Bridgestone Area Manager with responsibility for Bridgestone-Wheaton, conducted an audit and noticed some missing inventory. Washington and Rice informed the Bridgestone Regional Manager, Dwight Taylor, of the issue and requested the installation of security cameras, but Taylor declined to authorize the security cameras because the problem was not "big enough." Compl. at 2, ECF No. 1. Around September 9, 2023, Washington determined that approximately 30 tires were missing. When he reported this second incident, Bridgestone Regional Operations Manager Holy Santos began an investigation that resulted in the installation of a security camera at Bridgestone-Wheaton. When Washington saw on the security camera that a longtime technician was stealing tires, he informed Bridgestone management, and the technician was fired. Bridgestone management reviewed additional security videos and fired a "few more" employees. Compl. at 4.

On October 13, 2023, at a meeting requested by Bridgestone management "to clear up the investigation," Taylor told Washington that "you had a good run with us but you [are] fired." *Id.* Washington then spoke to Santos, who told him that "it was best for me to retire and not get fired." *Id.* Washington, however, had many years left before retirement and had to cash out his retirement plan following his departure. According to Washington, his termination or forced retirement was the result of race discrimination and retaliation for reporting on and "cracking down" on the ongoing theft from Bridgestone-Wheaton. *Id.*

Construed liberally, the present Complaint in this Court alleges that based on the events described above, Bridgestone engaged in race discrimination, a hostile work environment based on race, and retaliation in violation of Title VII.

## II. The Employee Dispute Resolution Plan

On June 11, 2011, while Washington was already working for Bridgestone, Bridgestone introduced an Employee Dispute Resolution Plan ("the EDR Plan") that states that it was "intended to facilitate the prompt, fair, and inexpensive resolution of legal disputes between the Company and its present and former Employees, and applicants for employment" and that it was "intended to create an exclusive mechanism for the final resolution of all disputes" covered by the EDR Plan. EDR Plan § 1, Mot. Ex. A, ECF No. 17-2. The EDR Plan defines the "Parties" to the EDR Plan as Bridgestone and "each Employee who is in the employment of [Bridgestone] on or after the effective date of the EDR Plan" and states that it "applies to and binds" Bridgestone and such employees. Id. §§ 2.G, 4.A. As relevant here, it also states that "continued employment . . . after the effective date of the [EDR Plan] constitutes consent and agreement by both the Employee and the Company to be bound by [the EDR Plan's] terms." Id. at 1.

Under the EDR Plan, any party seeking to resolve a dispute must first "submit the dispute to mediation" through the American Arbitration Association ("AAA") pursuant to a specific process set forth in the EDR Plan. Id. § 5.A. Then, if mediation does not resolve the dispute, the party must "initiate arbitration proceedings" before the AAA pursuant to specific procedures set forth in the EDR Plan. Id. § 6.B. The EDR Plan provides that this process "is the exclusive, final and binding means by which Disputes can be resolved" between Parties and that "[e]xcept as provided herein, the Parties shall have no right to litigate a Dispute in any other forum." Id. § 3.

As for the range of disputes covered by the EDR Plan, it states that it applies to any "legal claim between persons bound by the EDR Plan which relates to, arises from, concerns, or involves in any way . . . [t]he employment of any Employee, including the application for and the initiation, terms, conditions, or termination of such employment" and "[a]ny other matter arising from or concerning the employment relationship between the Employee and [Bridgestone]." *Id.* §§ 2.D.2, 2.D.3. Among a list of specific examples of disputes covered within this latter category are "[c]laims of discrimination or harassment on any basis, including race . . . arising under any federal, state, or local constitution [or] statute . . . including Title VII of the Civil Rights Act of 1964" and "[r]etaliation claims for whistle blowing or other legally protected activity." *Id.* § 2.D.3.

On June 7, 2011, Washington signed a "Current Employee Acknowledgement" form ("the Acknowledgment Form"), which states that:

> I hereby acknowledge my receipt of the Bridgestone Retail Operations, LLC Employee Dispute Resolution Plan, hereinafter referred to as "the EDR Plan." I also acknowledge that I have had an opportunity to review the EDR Plan. I further acknowledge that the EDR Plan fully defines the disputes that are covered, describes the procedures for mediation and arbitration, and sets forth the remedies I may obtain.

Acknowledgment Form at 1, Mot. Ex. B, ECF No. 17-3.

## DISCUSSION

In the Motion, Bridgestone argues that pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–14, and based on the EDR Plan, the Court must compel the parties to resolve this case by arbitration. Specifically, Bridgestone argues that the FAA applies to the EDR Plan, that the EDR Plan is a binding agreement that is valid and enforceable, and that Washington's claims are covered by the EDR Plan. Bridgestone also argues that the Court should stay this case pending arbitration or, alternatively, dismiss Washington's claims for lack of subject matter jurisdiction.

I.      **Legal Standard**

"[M]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013) (quoting *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004)); *PC Const. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012). Treating a motion to compel arbitration as a motion for summary judgment is proper where documents outside the pleadings must be considered to resolve the motion. *See Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021) (stating that in denying a motion to compel arbitration, the district court "in effect granted summary judgment" on the issue); *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683-84 (D. Md. 2004); *accord PC Const. Co.*, 871 F. Supp. 2d at 477 ("Whether the motion [to compel arbitration] should be treated as a motion to dismiss or a motion for summary judgment turns on whether the court must consider documents outside the pleadings."). Here, the Court will apply the summary judgment standard because resolving this dispute requires consideration of materials beyond the pleadings.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine"

only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II. FAA

Bridgestone's request to compel arbitration is governed by the FAA, which provides that: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. Thus, a litigant in federal court may compel arbitration under the FAA upon a demonstration of: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision that purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of the other party to arbitrate the dispute. *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991).

Three of these elements are not in dispute. As to the first and fourth elements, the present action constitutes a dispute between the parties, and Washington has refused to arbitrate the dispute by first pursuing his claims in court. As to the third element, there is no dispute that the transaction between Washington and Bridgestone, an employment relationship as described in the text of the EDR Plan, related to interstate commerce. The Court therefore considers the second element: whether the EDR Plan is a valid and enforceable written arbitration agreement between the parties, and whether Washington's claims are covered by the EDR Plan's provisions.

## III. Agreement

In determining whether a valid arbitration agreement exists between the parties, the Court applies ordinary state law principles governing the formation of contracts. *First Options of*

6

*Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). As Washington worked for Bridgestone in Wheaton, Maryland and thus presumably agreed to the EDR Plan in that state, Maryland law applies to the evaluation of the issue of contract formation. *See Kramer v. Bally's Park Place, Inc.*, 535 A.2d 466, 467 (Md. 1988) ("[T]he law of the jurisdiction where the contract was made controls its validity and construction."). Under Maryland law, the formation of a contract requires an offer by one party, acceptance by another, and consideration. *Cochran v. Norkunas*, 919 A.2d 700, 713 (Md. 2007). An arbitration clause is "an independently enforceable contract" that is a "severable part of the contract." *Cheek v. United Healthcare of the Mid-Atl., Inc.*, 835 A.2d 656, 664-65 (Md. 2003) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967)). Thus, in determining the validity of an arbitration clause in a contract, the provision "must be supported by consideration independent of the contract underlying it, namely, mutual obligation." *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 609 (4th Cir. 2013).

Here, the EDR Plan, on its face, is a contractual agreement between Bridgestone and Washington, who fits within the definition of "Parties" because he was an employee of Bridgestone, to resolve any disputes between them through mediation and arbitration before the AAA. EDR Plan §§ 2.G, 4.A. The question is whether Washington actually accepted and agreed to this contract. Under Maryland law, "[a]cceptance of an offer is requisite to contract formation, and common to all manifestations of acceptance is a demonstration that the parties had an actual meeting of the minds regarding contract formation." *Cochran*, 919 A.2d at 713. In this instance, Washington did not sign the EDR Plan document itself. Rather, Bridgestone has provided the Acknowledgment Form signed by Washington. The United States Court of Appeals for the Fourth Circuit has held that under Maryland law, a court can consider an acknowledgment form and an arbitration agreement as a single contract under certain circumstances. *Coady v. Nationwide Motor*

*Sales Corp.*, 32 F.4th 288, 292 (4th Cir. 2022). Specifically, in *Coady*, where an arbitration agreement explicitly referenced a separate "'Employee Handbook and Operating Procedures' Acknowledgement Receipt" form, the form itself "specifically identifie[d] the Arbitration Agreement," and "[i]n operation, an employee sign[ed] the Receipt to assent to the Agreement," the court found that it could consider the arbitration agreement and acknowledgment receipt form as a single contract and thus could consider a provision in the acknowledgment receipt form as part of the arbitration agreement. *Id.*

Here, the Court finds that the Acknowledgment Form signed by Washington and the EDR Plan constitute a single contract between Bridgestone and Washington. Although the EDR Plan does not specifically make reference to the Acknowledgment Form in its text, as in *Coady*, the Acknowledgment Form explicitly references both the EDR Plan and the fact that EDR Plan "describes the procedures for mediation and arbitration, and sets forth the remedies that [Washington] may obtain." Acknowledgment Form at 1. Further, as in *Coady*, "[i]n operation," Washington appears to have signed the Acknowledgment Form, which was provided to current employees when the EDR Plan was adopted, in order to assent to the EDR Plan. *Coady*, 32 F.4th at 292. The Court thus may fairly consider the Acknowledgment Form to be part of EDR Plan as it relates to Washington.

There remains the question of whether Washington's signature on the Acknowledgment Form constituted acceptance of a contract consisting of the EDR Plan. Notably, the Acknowledgment Form does not include language explicitly stating that Washington had agreed to the EDR Plan or accepted its terms. As a matter of best practices, such language should be included, and a company that fails to include such language, whether as a matter of poor draftsmanship or a deliberate effort to secure acceptance of an arbitration agreement by an

employee without full knowledge, runs a real risk of having its arbitration agreement invalidated. Here, however, the Court finds that the signed Acknowledgment Form is sufficient to establish acceptance of the EDR Plan. First, while it avoids using the terms agreement or acceptance, the Acknowledgment Form states that Washington received the EDR Plan, "had an opportunity to review the EDR Plan," and acknowledged that it "sets forth the remedies I may obtain." Acknowledgment Form at 1. While such language establishes that Washington was sufficiently aware of the terms of the EDR Plan, it does not alone establish that he agreed to be bound by it terms. However, the Court also considers the language of the EDR Plan itself, which demonstrates that it is, in fact, an agreement between Bridgestone and current employees in that it states that it "applies to and binds the Company" and "each Employee who is in the employment of the Company on or after the effective date of the EDR Plan." EDR Plan § 4.A. It also states, in its first paragraph, that "continued employment . . . constitutes consent and agreement by both the Employee and the Company to be bound" by the terms of the EDR Plan. *Id.* at 1. Considered together, the EDR Plan's statement that continuing to work for Bridgestone demonstrated an agreement to the EDR Plan, and Washington's signature on the Acknowledgment Form stating that he had the opportunity review the EDR Plan and knew that it set forth the remedies available to him, are sufficient to establish that Washington accepted the EDR Plan and thus is bound by its terms.

As for the final requirement for a contract, the Court finds that the EDR Plan is supported by adequate consideration. In determining the validity of an arbitration clause in a contract, the provision "must be supported by consideration independent of the contract underlying it, namely, mutual obligation." *Noohi*, 708 F.3d at 609 (citing *Cheek*, 835 A.2d at 665). Consideration may take the form of "[f]orbearance to exercise a right or pursue a claim," provided that it is a binding

obligation. *Cheek*, 835 A.2d at 661. Here, the terms of the EDR Plan require both Washington and Bridgestone, outside of certain mutually applicable exceptions, to submit all disputes between them to arbitration, regardless of which party asserted them. Specifically, as discussed above, the EDR Plan explicitly "binds the Company," which it defines as Bridgestone, and provides that it applies to "any Dispute between persons bound by the EDR Plan." EDR Plan §§ 4.A, 4.B. Thus, where both parties have agreed to be bound by the EDR Plan's mediation and arbitration process, sufficient consideration exists for the EDR Plan to constitute a valid contract. *Cheek*, 835 A.2d at 665 (stating that "mutual promises to arbitrate act as 'an independently enforceable contract'" in that "each party has promised to arbitrate disputes arising from an underlying contract, and 'each promise provides consideration for the other'" (quoting *Holmes v. Coverall N. Am., Inc.*, 649 A.2d 365, 370 (Md. 1994))).

The Court therefore finds that the EDR Plan constitutes a valid contract entered into and accepted by both Bridgestone and Washington.

## IV.    Coverage of Claims

The Court must also find that Washington's claims are covered by the EDR Plan and thus subject to its mandatory mediation and arbitration processes. A court may compel arbitration of a dispute only when "the scope of the parties' agreement permits resolution of the dispute at issue." *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Deciding the scope of the arbitration agreement is "primarily a question of contract interpretation, requiring that we give effect to the parties' intentions as expressed in their agreement." *Id.* To the extent the agreement is ambiguous on whether a dispute is arbitrable, this ambiguity must be resolved in favor of

10

arbitration. *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Washington argues that the EDR Plan does not apply to his present claims against Bridgestone and thus does not compel arbitration of those claims because he was not actually terminated but was instead forced to retire. The EDR Plan provides that, other than for certain exceptions not applicable here, any claims relating to "[t]he employment of an Employee, including the application for and the initiation, terms, conditions, or termination of such employment," or to "[a]ny other matter arising from or concerning the employment relationship between the Employee and [Bridgestone]," are subject to the EDR Plan's dispute resolution process. EDR Plan §§ 2.D.2, 2.D.3. This broad language encompasses Washington's Title VII claims, regardless of whether they are based on a termination of his employment or some other outcome, such as a forced retirement. Indeed, the EDR Plan specifically states that "claims of discrimination or harassment on any basis, including race . . . arising under any federal . . . statute . . ., including Title VII of the Civil Rights Act of 1964," and "[r]etaliation claims for . . . legally protected activity," are both subject to its dispute resolution process, without limiting such applicability to claims involving a termination of employment. *Id.* § 2.D.3. Thus, regardless of whether Washington was actually terminated or forced into retirement, his claims of discrimination, harassment, and retaliation under Title VII are covered by the EDR Plan and are thus subject to the EDR Plan's mandatory mediation and arbitration process.

## V.     Remaining Arguments

Where the Court has found that the EDR Plan is a valid contract between Bridgestone and Washington, and that his claims are covered by the EDR Plan, the FAA requires that the parties be compelled to arbitrate the dispute. None of Washington's remaining arguments alter this

conclusion. First, Washington generally asserts that an arbitration provision is "unenforceable if the contract violates public policy or precludes a party from recovering in [a]rbitration what would be otherwise [a]vailable in civil court." Opp'n at 3, ECF No. 18. Washington, however, does not explain how the EDR Plan violates public policy. Rather, courts have recognized that Maryland has a "public policy favoring" arbitration agreements and have rejected the argument that arbitration agreements that are effectively contracts of adhesion in that one party has no opportunity for negotiation are "*per se* unconscionable." *Walther v. Sovereign Bank*, 872 A.2d 735, 743, 746 (Md. 2005). Where the Court has concluded that the EDR Plan is supported by adequate consideration, *see supra* Part III, and where Washington has not identified any specific provisions in the EDR Plan that violate public policy or are substantively unconscionable, the Court declines to find that the EDR Plan is unenforceable on this basis. Indeed, courts have also rejected the argument that an arbitration agreement should not be enforced because it precludes litigation of employment discrimination claims in federal court and results in waiver of a jury trial. *Holloman v. Circuit City Stores, Inc.*, 894 A.2d 547, 556-57 (Md. 2006). Notably, in this instance, the EDR Plan provides that the arbitrator may "order any and all relief, legal or equitable, which a Party could obtain from a United States District Court sitting at the place of the arbitration hearing on the basis of the Dispute alleged." EDR Plan §§ 28, 33.D.

Second, Washington references the fact that he pursued the administrative complaint process before the United States Equal Opportunity Employment Commission ("EEOC") and received a Notice of Right to Sue. That authorization, however, provided only a certification that he had completed the administrative steps required by Title VII before a suit may be filed in court. *See* 42 U.S.C. § 2000e-5(f)(1). It did not address whether, based on a binding arbitration agreement, he is required to pursue his dispute in arbitration proceedings rather than in court.

Finally, although Washington invokes the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and asserts that arbitration "will not fix the constitutional violation" or provide remedies that will cause Bridgestone to bring its policies "up to constitutional standards," Opp'n at 4, ECF No. 18, the Court notes that Washington did not assert any constitutional claims in the Complaint. Even if he did, because Bridgestone is a private company, it is not subject to these constitutional provisions, which generally bind only governmental actors. *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191-92 (1988). In any event, to the extent that Washington has any viable constitutional claims, they are covered by the EDR Plan, *see* EDR Plan § 2.D.3, and could be fully adjudicated by the arbitrator, who may "order any and all relief, legal or equitable, which a Party could obtain from a United States District Court . . . ." *Id.* § 33.D. Accordingly, the Court finds that the EDR Plan is a valid agreement that covers all of Washington's claims, and that those claims must therefore proceed to mediation and arbitration pursuant to the EDR Plan.

## VI. Stay or Dismissal

As for whether to stay the proceedings pending arbitration or grant Bridgestone's request to dismiss the case, the Court will stay the proceedings as required by the FAA. Bridgestone offers no legal authority to support its request that the Court dismiss Washington's claims for lack of subject matter jurisdiction. Indeed, the FAA states that when a court determines that the issues involved in a suit are "referable to arbitration under an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. The United States Supreme Court has recently interpreted this language to require courts to stay, rather than dismiss, a suit subject to arbitration and has clarified that a federal court "does not have discretion to dismiss

the suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 144 S. Ct. 1173, 1176, 1178 (2024). Accordingly, the Court will stay this case pending the arbitration of the dispute between the parties.

## CONCLUSION

For the foregoing reasons, Bridgestone's Motion to Compel Arbitration or, Alternatively, Dismiss will be GRANTED in that the Court will compel arbitration of all claims in the Complaint and stay this case pending the completion of such arbitration. A separate Order shall issue.

Date:  November 14, 2024

                                        THEODORE D. CHUANG
                                        United States District Judge